IGNACIO E. SALCEDA, State Bar No. 164017
BENJAMIN M. CROSSON, State Bar No. 247560
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100
Email:  isalceda@wsgr.com
        bcrosson@wsgr.com

Attorneys for Defendant,
Antonio Garcias

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LEONARD STASTNY, derivatively on behalf of SOLARCITY, INC.., <br><br> Plaintiff, <br><br> v. <br><br> LYNDON RIVE, PETER RIVE, ELON MUSK, JOHN H.N. FISHER, DONALD R. KENDALL, JR., NANCY E. PFUND,  JONATHAN K. SHULKIN, JEFFREY B. STRAUBEL, BENNET VAN DE BUNT AND ANTONIO GARCIAS, <br><br> Defendants, <br><br> and <br><br> SOLARCITY CORPORATION, <br><br> Nominal Defendant. | CASE NO.: <br><br> (Santa Clara County Superior Court Case No. CIV529018) <br><br> **NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1441(B) (DIVERSITY)** |

NOTICE OF REMOVAL OF ACTION

1   TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

2   DISTRICT OF CALIFORNIA:

3            PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441(a) and (b), and

4   1446, Defendant Antonio Garcias, by and through his undersigned counsel, hereby removes to

5   this Court the state court action described below:

6            1.      On June 11, 2014, Plaintiff Leonard Stastny ("Plaintiff") filed a Shareholder

7   Derivative Complaint in the Superior Court of California for the County of San Mateo (the

8   "Superior Court"), captioned *Stastny v. Rive*, Case No. CIV529018.  A copy of the state court

9   complaint (the "Complaint") and summons is attached as Exhibit A.  The Complaint is a

10  shareholder derivative action purportedly brought on behalf of SolarCity, Inc.. ("SolarCity" or

11  the "Company"), and seeks monetary damages from the individual defendants on behalf of

12  SolarCity, among other relief.

13           2.      On June 18, 2014, Defendant Antonio Garcias ("Defendant") appeared and

14  accepted service of process in this Superior Court action.  A copy of the notice is attached as

15  Exhibit B.

16                                **DIVERSITY JURISDICTION**

17           3.      This is a civil action of which this Court has original jurisdiction under 28 U.S.C.

18  § 1332, and is one which may be removed to this Court by Mr. Garcias pursuant to the

19  provisions of 28 U.S.C. § 1441(b), in that it is a civil action wherein the amount in controversy

20  exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different

21  states.

22           4.      Plaintiff's Complaint does not specify the dollar amount of damages sought.  This

23  fact does not deprive this Court of jurisdiction.  If it is apparent from the facts alleged in the

24  complaint, which are assumed to be true for purposes of this analysis, that the estimated amount

25  in controversy exceeds the jurisdictional requirement, the Court may take jurisdiction.  *See*

26  *Singer v. State Farm Mutual Automobile Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) ("The

27  district court may consider whether it is 'facially apparent' from the complaint that the

28  jurisdictional amount is in controversy."); *see also Campbell v. Vitran Express, Inc.*, 471 Fed.

1   Appx. 646, 647-48 (9th Cir. 2012). Here, the Complaint stems from SolarCity's March 18, 2014

2   restatement of its financial statements for the first three quarters of 2012, the 2012 fiscal year,

3   and the first three quarters of 2013. *See*. Ex. A at ¶¶ 8-10, 44-46. According to the Plaintiff,

4   this restatement resulted in a one-day drop in SolarCity's stock price of $4.40, or almost 6%. *See*

5   *id.* ¶ 10. As a result of that restatement, the Plaintiff claims that the defendants breached their

6   fiduciary duties to the Company and shareholders by, among other things, disseminating false

7   and misleading statements to the public. *See id.* ¶¶ 2, 11. The Plaintiff also alleges that the

8   Defendants have exposed the Company to "millions of dollars of liability" for alleged securities

9   law violations. *Id.* ¶ 11. In addition, the Plaintiff alleges that management and the SolarCity

10   board of directors collected undeserved compensation. *Id.* ¶ 11. The Complaint alleges that the

11   defendants are responsible for all these alleged harms, and seeks an order requiring the

12   individual defendants to pay these damages to SolarCity. *Id.* Prayer for Relief. These

13   allegations reflect that the amount in controversy exceeds $75,000, exclusive of interest and

14   costs.

15        5.    The Complaint does not identify Plaintiff's citizenship. Defendant is informed

16   and believes that Plaintiff is either a citizen of Montana or Iowa, states where no other defendant

17   resides.

18        6.    Defendant is further informed and believes that none of the other defendants have

19   been served in this action. Removal under diversity of citizenship is therefore proper because no

20   defendant who has been "properly joined *and served*" is a citizen of California. 28 U.S.C.

21   § 1446(b) (emphasis added); *Regal Stone Limited v. Longs Drug Stores California, L.L.C.*, 881

22   F. Supp. 2d 1123, 1128-29 (N.D. Cal. 2012) (holding that Court had diversity removal

23   jurisdiction notwithstanding the presence of an unserved California citizen defendant); *Carreon*

24   *v. Alza Corp.*, No. 09-5623, 2010 WL 539392, at *1-2 (N.D. Cal. Feb. 9, 2010) (same). *See* 28

25   U.S.C. § 1441(b) (diversity action is removable only if none of the "parties in interest properly

26   joined and *served* as defendants is a citizen of the State in which such action is brought.")

27   (emphasis added); *Republic Western Insurance Co. v. Oxford Property & Cas. Ins. Co.*, 765 F.

28

1  Supp. 628 (N.D. Cal. 1991) (holding removal proper where out-of-state defendant removed

2  before local defendant was served).

3        7.      Accordingly, all of the requirements of 28 U.S.C. § 1332 are present and less than

4  30 days have elapsed between service of this suit and this Notice of Removal as is required by 28

5  U.S.C. § 1446(b), therefore this action may properly be removed to this Court under 28 U.S.C.

6  § 1441(a) & (b).

7                                          **VENUE**

8        8.      Pursuant to 28 U.S.C. § 1441(a), "[e]xcept as otherwise expressly provided by

9  Act of Congress, any civil action brought in a State court of which the district courts of the

10  United States have original jurisdiction, may be removed by the defendant or the defendants, to

11  the district court of the United States for the district and division embracing the place where such

12  action is pending."  The Superior Court is located within the San Francisco Division of this

13  District.  Accordingly, venue in this Court is proper under 28 U.S.C. § 1441(a).

14                          **SERVICE AND FILING OF NOTICES**

15        9.      Pursuant to 28 U.S.C. § 1446(d), Mr. Garcias will promptly serve a copy of this

16  Notice on counsel for Plaintiff and will file a copy of this Notice with the Superior Court.

17        10.     Accordingly, Mr. Garcias prays that this action be removed from the Superior

18  Court to this Court.

19  Dated:  June 18, 2014                    WILSON SONSINI GOODRICH & ROSATI
                                             Professional Corporation
20

21                                          By:  ___/s/ Ignacio E. Salceda_____
22                                                 IGNACIO E. SALCEDA
                                                   Email:  isalceda@wsgr.com
23
                                             Attorneys for Defendant Antonio Garcias
24

25

26

27

28

NOTICE OF REMOVAL OF ACTION          -3-

# EXHIBIT A

Robert S. Green
GREEN & NOBLIN, P.C.
700 Larkspur Landing Circle, Suite 275
Larkspur, CA 94939-1755
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
gnecf@classcounsel.com

Marc S. Henzel
LAW OFFICES OF MARC HENZEL
431 Montgomery Ave., Suite B
Merion Station, PA 19066
Telephone: (610) 660-8000
Facsimile: (610) 660-8080
mhenzel@henzellaw.com

*Attorneys for Plaintiff*

**FILED**
**SAN MATEO COUNTY**

JUN 1 1 2014

Clerk of the Superior Court

By _____
DEPUTY CLERK

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

LEONARD STASTNY, derivatively on
behalf of SOLARCITY, INC.,

        Plaintiff,

    v.

LYNDON RIVE, PETER RIVE, ELON
MUSK, JOHN H.N. FISHER, DONALD R.
KENDALL, JR., NANCY E. PFUND,
JONATHAN K. SHULKIN, JEFFREY B.
STRAUBEL, BENNET VAN DE BUNT
AND ANTONIO J. GARCIAS,

        Defendants,

    and

SOLARCITY CORPORATION,

        Nominal Defendant.

Case No. **CIV 5 2 9 0 1 8**

**VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT**

**JURY TRIAL DEMANDED**

BY FAX

## INTRODUCTION

1.    This is a verified shareholder derivative action brought on behalf of Nominal

Defendant SolarCity Corporation ("SolarCity" or the "Company"). The relevant period is from

- 1 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

March 2013 through the present (the "Relevant Period"). This action is brought against certain of SolarCity's current and former officers and directors for breaches of fiduciary duties and unjust enrichment.

2.      Specifically, throughout the Relevant Period, Defendants (defined below) breached their fiduciary duties owed to SolarCity and its shareholders by disseminating false and misleading statements to the investing public.

3.      SolarCity sells renewable energy to its customers at prices below utility rates, primarily through the leasing or sale of solar energy systems. The Company claims that its long-term agreements generate recurring customer payments and position SolarCity to provide a growing base of customers with energy-related products and services that lower their energy costs. The Company offered its shares to the public for the first time in December 2012, and commenced a secondary offering in October 2013.

4.      The Company operates in two primary segments, Operating Leases ("Leasing") and Solar Energy Systems Sales ("Sales"). Both segments receive a significant amount of revenues over recurring periods through customer payments, investment tax credits, accelerated tax depreciation and other incentives.

5.      SolarCity has established various financing methods to facilitate the Company's growth in the solar energy market, where high upfront costs associated with solar panel technology had previously prohibited many customers from purchasing solar energy. The Company has historically monetized its assets created by substantially all of its leases and purchase agreements via financing funds formed with investors.

6.      Throughout the Relevant Period, the Defendants incorrectly accounted for expenses associated with the Company's larger Sales segment, and failed to properly allocate

- 2 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

such expenses between the Sales and Leasing segments. The Company, which was under pressure from investors to demonstrate the strength of its solar energy operations, improperly allocated expenses between its two reporting segments in order to hide the Sales segment's ballooning expenses, thereby inflating the segment's reported gross margins.

7.     Throughout the Relevant Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company lacked adequate controls over financial reporting; (ii) the Company misclassified its reported expenses; (iii) the Company's prior financial statements required restatement; and (iv) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

8.     On March 3, 2014, the Company announced that it had discovered an error in its financial reporting, and discovered tens of millions in overhead expenses that it had incorrectly classified.  The severity of the Company's financial manipulations became more apparent on March 18, 2014, when the Company issued a press release providing more information regarding its restatement.

9.     Also, that same day, the Company filed an 8-K report informing investors that its prior financial statements for the annual periods ended December 31, 2010, 2011 and 2012 should no longer be relied upon, "as a result of (i) an error related to the presentation of non-cash stock based compensation costs in the consolidated statement of cash flows for the portion of such costs that were capitalized as part of the costs of solar energy systems leased and to be leased; and (ii) an error related to the classification of certain of the non-controlling interests in subsidiaries after the Company concluded that certain non-controlling interests with redemption

- 3 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

rights should be presented in temporary equity and not permanent equity as had previously been disclosed. These matters also impacted the 2013 interim and 2012 annual and interim consolidated financial statements referred to in our Form 8-K filed on March 3, 2014."

10. On this news, the Company's shares fell $4.40, or almost 6%, to close on March 19, 2014 at $72.70 per share.

11. Defendants' conduct was extremely reckless, and has resulted in substantial damages to SolarCity and its stockholders, while management and the Board have continued to reap undeserved compensation. Defendants have also exposed the Company to civil liability as a result of a number of securities fraud class action lawsuits (the "Securities Class Action") pending against the Company and certain of its senior executive officers. The damages to the Company include, among other things, investigatory and litigation costs, including costs for defending the Company in the Securities Class Action. The Company is also exposed to millions of dollars of liability for alleged securities law violations.

## JURISDICTION AND VENUE

12. Jurisdiction is proper in this Court pursuant to Cal. Const. art. VI, § 10 because this case is a cause not given by statute to other trial courts, as this derivative action is brought pursuant to §800 of the California Corporations Code to remedy Defendants' violations of law.

13. This Court retains general jurisdiction over each named Defendant who is a resident of California. Additionally, this Court has specific jurisdiction over each named non-resident Defendant because these Defendants maintain sufficient minimum contacts with California to render jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. SolarCity conducts business in this County and because the allegations contained herein are brought derivatively on behalf of SolarCity, Defendants' conduct was

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

purposefully directed at California. Finally, exercising jurisdiction over any non-resident Defendant is reasonable under these circumstances.

14. Venue is proper in this Court because one or more of the Defendants either resides in or maintains executive offices in this County, a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participating in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to SolarCity occurred in this County, and Defendants have received substantial compensation in this County by doing business here and engaging in numerous activities that had an effect in this County.

## PARTIES

15. Plaintiff Leonard Stastny is a current shareholder of SolarCity and has continuously held SolarCity stock during the Relevant Period through the present.

16. Nominal Defendant SolarCity is incorporated in the State of Delaware. SolarCity conducts business in this county at San Mateo, California.

17. Defendant Lyndon Rive ("L. Rive") is the co-founder and Chief Executive Officer ("CEO") of the Company. Rive has also served as a director since 2006.

18. Defendant Peter Rive ("P. Rive") is the co-founder of the Company and also serves as its Chief Technology Officer. P. Rive has served as a director since 2006. L. Rive and P. Rive are brothers.

19. Defendant Elon Musk ("Musk") is the Chairman of the Company's Board and principal shareholder. Musk has served as a director since 2006. P. and L. Rive are cousins with Musk.

20. Defendant John H.N. Fisher ("Fisher") has served as a director since 2007. Fisher is also a member of the Audit, Compensation, and Nominating and Corporate Governance

Committees.  Effective June 4, 2014 Fisher will serve as the Chairperson of the Compensation Committee.

21.     Defendant Donald R. Kendall, Jr. ("Kendall") has served as a director since 2012. Kendall serves as the Chairperson of the Audit Committee.

22.     Defendant Nancy E. Pfund ("Pfund") has served as a director since 2007.  Pfund is a member of the Audit, Nominating and Corporate Governance, and Compensation Committees.  Effective as of June 4, 2014, Pfund will serve as the Chairperson of the Nominating and Corporate Goverannce Committee.

23.     Defendant Jonathan K. Shulkin ("Shulkin") has served as a director since March 2014.  Shulkin is a member of the Audit Committee.

24.     Defendant Jeffrey B. Straubel ("Straubel") has served as a director since 2006. Straubel is also a member of the Compensation and Nominating and Corporate Governance Committees.

25.     Defendant Bennet Van de Bunt ("Van de Bunt") has served as a director since November 2013.

26.     Antonio J. Garcias ("Garcias") has served as a director since 2012.

27.     Defendants Musk, Fisher, Kendall, Pfund, Shulkin, L. Rive, P. Rive, Straubel, Rive, Garcias and Van de Bunt are collectively referred to herein as the "Defendants."

## DEFENDANTS' DUTIES

28.     By reason of their positions as officers and/or directors, and fiduciaries of SolarCity and because of their ability to control the business and corporate affairs of SolarCity, Defendants owed SolarCity and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage SolarCity in

- 6 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

a fair, just, honest, and equitable manner. Defendants were and are required to act in furtherance of the best interests of SolarCity and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interests or benefit. Each director and officer of the Company owed and owes to SolarCity and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

29.     Defendants, because of their positions of control and authority as directors and/or officers of SolarCity, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with SolarCity, each of the Defendants had knowledge of material non-public information regarding the Company.

30.     To discharge their duties, the officers and directors of SolarCity were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of SolarCity were required to, among other things:

(a)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of the Company's business;

(b)     Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements; and

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1          (c)     When put on notice of problems with the Company's business practices

2 and operations, exercise good faith in taking appropriate action to correct the misconduct and

3 prevent its recurrence.

4                                   **BACKGROUND**

5          31.     SolarCity sells renewable energy to its customers at prices below utility rates,

6 primarily through the leasing or sale of solar energy systems.  The Company claims that its long-

7 term agreements generate recurring customer payments and position SolarCity to provide a

8 growing base of customers with energy-related products and services that lower their energy

9 costs. The Company offered its shares to the public for the first time in December 2012, and

10 commenced a secondary offering in October 2013.

11          32.     The Company operates in two primary segments, Operating Leases ("Leasing")

12 and Solar Energy Systems Sales ("Sales"). Both segments receive a significant amount of

13 revenues over recurring periods through customer payments, investment tax credits, accelerated

14 tax depreciation and other incentives.

15          33.     SolarCity has established various financing methods to facilitate the Company's

16 growth in the solar energy market, where high upfront costs associated with solar panel

17 technology had previously prohibited many customers from purchasing solar energy.  The

18 Company has historically monetized its assets created by substantially all of its leases and

19 purchase agreements via financing funds formed with investors. The Company contributes the

20 solar panel assets to the financing fund and receives upfront cash and retains a residual interest in

21 the stream of future cash inflows to the fund.

22          34.     Throughout the Relevant Period, the Defendants misclassified expenses

23 associated with the Company's larger Sales segment, and failed to properly allocate such

24 expenses between the Sales and Leasing segments.

- 8 -

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

35.   On December 12, 2012, the Company filed with the SEC a prospectus in connection with its initial public offering of SolarCity common stock. The offering raised $92 million and after expenses, the Company received $85,305,010. In its prospectus, the Company reported operating lease expenses of $1.9 million, $3.1 million, $5.7 million and $8.6 million for the annual periods ending December 31, 2009, 2010, 2011 and nine months ending September 30, 2012 respectively. For the nine months ended September 30, 2012, the Company reported a net loss of $61.1 million or $5.63 per share.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE RELEVANT PERIOD

36.   On March 6, 2013, the Company held a conference call with investors to discuss the fourth quarter and full year results from 2012.  Defendant L. Rive stated that the Company was experiencing a great year, adding, "we could not have asked for a better year. When we review the business metrics, you'll see that key business metrics had at least 100% growth, some as high as 300% growth.  We are clearly on our way to building the most compelling energy company in the 21st century."  Regarding its expenses, the Company represented, in relevant part:

> The third and final area to look at for the GAAP statement analyzed is related to the operating expenses, the sales and marketing and the G&A. The sales and marketing are costs which are related -primarily associated with acquiring new customers. This is your growth capital. This is the money you invest to bring in new assets and new customers in the future. When the operating lease revenues build up over time and exceed your growth capital, you will achieve GAAP profitability as the volume increases on our books. In fact, the profitability - if we slow down our growth, the GAAP profitability would occur much faster, quicker.

37.   On March 27, 2013, the Company filed with the SEC on Form 10-K its annual report for the period ended December 31, 2012, which was signed by Defendant L. Rive, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of

- 9 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

2002 ("SOX") by Defendant L. Rive, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

38.    In its 2012 annual report, the Company reported Leasing revenues of $47.6 million and Sales revenues of $81 million, with Leasing costs of revenue of $13.3 million and Sales costs of revenue of $62.4 million, resulting in a net loss of $91.5 million or $5.22 per diluted share.  The Company also represented the following regarding the allocation of expenses between the Leasing and Sales segments:

> *Operating Leases Cost of Revenue.* Operating leases cost of revenue is primarily comprised of the depreciation of the cost of the solar energy systems and the amortization of initial direct costs. The depreciation of the cost of the solar energy systems is reduced by the amortization of any U.S. Treasury Department grant payment in lieu of the energy investment tax credit associated with these systems. Initial direct costs include allocated contract administration costs, sales commissions and customer acquisition referral fees. Contract administration costs include personnel costs, such as salary, bonus, employee benefit costs and stock-based compensation costs. Operating leases cost of revenue also includes direct and allocated costs associated with monitoring services for these systems.

> *Solar Energy Systems Cost of Revenue.* The substantial majority of solar energy systems cost of revenue consists of the costs of solar energy systems component acquisition and personnel costs associated with system installations. We acquire the significant component parts of the solar energy systems directly from foreign and domestic manufacturers or distributors.  Our employees install our residential solar energy systems and our project managers and construction managers oversee the subcontractors that install commercial systems. To a lesser extent, solar energy systems cost of revenue also includes personnel costs associated with performing our energy efficiency services and related materials. Solar energy systems cost of revenue also includes engineering and design costs, estimated warranty costs, freight charges, allocated corporate overhead costs such as facilities costs, vehicle depreciation costs and personnel costs associated with supply chain, logistics, operations management, safety and quality control. Personnel costs include salary, bonus, employee benefit costs and stock-based compensation costs.

> We allocate to solar energy systems cost of revenue certain corporate overhead costs that include rental and operating costs for our corporate facilities, information technology costs, travel expenses and certain professional services to cost of solar energy systems, work in process, cost of sales, sales and marketing

- 10 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

and general and administrative expenses using the relative proportions of direct payroll costs in each of these functions.

39.     On May 15, 2013, SolarCity filed its quarterly report with the SEC on Form 10-Q for the period ended March 31, 2013. The Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), by Defendant L. Rive, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.  For the three months ended March 31, 2013, the Company reported Leasing revenues of $15 million, Sales revenues of $14 million, and Leasing costs of revenues of $5 million and Sales costs of revenues of $11.7 million, resulting in a net loss of $28 million or $0.41 per diluted share.

40.     On August 9, 2013, SolarCity filed its quarterly report with the SEC on Form 10-Q for the period ended June 30, 2013. For the three months ended June 30, 2013, the Company reported Leasing revenues of $20.6 million, Sales revenues of $17.3 million, and Leasing costs of revenues of $7.2 million and Sales costs of revenues of $15.2 million, resulting in a net loss of $32.6 million or $0.31 per diluted share. Regarding costs of revenues for each segment, the Company stated in relevant part:

> Cost of operating leases revenue increased by $3.5 million, or 95%, for the three months ended June 30, 2013 as compared to the three months ended June 30, 2012. This increase was primarily due to an increase in the aggregate cost of solar energy systems placed under operating leases that were interconnected and being depreciated.

> Cost of sales of solar energy systems decreased by $16.7 million, or 52%, for the three months ended June 30, 2013 as compared to the three months ended June 30, 2012. This decrease was in line with the decline in sales of solar energy systems. In addition, estimated losses from long-term solar energy system sales contracts decreased by $0.5 million for the three months ended June 30, 2013 as compared to the three months ended June 30, 2012.

41.     On or around October 16, 2013, the Company offered to the public approximately 3.91 million of SolarCity shares at the price of $46.54 per share. The Company filed a series of

- 11 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

prospectuses and registration statements, announcing SolarCity's future goals and reported on the Company's financial and operational performance to date. Among other items, the Company announced total revenues of over $67 million, Leasing cost of revenues of $12.7 million and Sales cost of revenues of $27 million, resulting in a net loss of $60.8 million or $0.72 per diluted share.

42. On November 12, 2013, the Company filed a quarterly report for the quarter ended September 30, 2013 on a Form 10-Q with the SEC, which was signed by Defendant L. Rive. The Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), by Defendant L. Rive, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting. For the three months ended September 30, 2013, the Company reported total revenues of $48.6 million, and costs of revenues of $8.4 and $22.6 million for the Leasing and Sales segments respectively.

43. The statements referenced above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them, including that: (i) the Company lacked adequate controls over financial reporting; (ii) the Company misclassified its segment expenses; (iii) the Company's prior financial statements required restatement; and (iv) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

44. On March 3, 2014, the Company announced that it had discovered an error in its financial reporting, disclosing tens of millions in overhead expenses that it had incorrectly classified:

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

SolarCity today announced that there will be a reallocation of overhead expenses from leased systems to system sales, which will affect the 2013 and 2012 GAAP financial statements. The estimated changes are described below and final, audited statements will be filed on or before Tuesday, March 18, 2014.

During an internal review of fourth quarter financial statements, we discovered an error in the formula for allocating overhead expenses between Operating Lease assets and the cost of Solar Energy System Sales originating in Q1 2012. We reported this to our auditors, who agreed with our assessment that a correction needed to be made. It is important to note that overhead expenses in total will not be amended and that these changes do not affect the net cash flows or any forward financial guidance of the company.

The GAAP impact is expected to be a downward adjustment on the balance sheet primarily in Solar Energy Systems, Leased and to Be Leased of approximately 2.5%-3.0% as of September 30, 2013. We also expect an increase in the cost of Solar Energy Systems Sales of approximately $16-$20 million on the statement of operations for the nine month period ended September 30, 2013 and an increase of approximately $20-$23 million to the same line item for the full-year 2012, while we are currently evaluating the materiality of the impact on 2011.

45. On this news, SolarCity securities declined $1.70 per share, or over 2%, to close at $83.26 per share on March 3, 2014.

46. The severity of the accounting manipulations became even more apparent on March 18, 2014, when Defendants caused the Company to issue a press release announcing further information regarding its financial restatement. The Company stated, in relevant part:

We have finalized the overhead reallocation we had previously announced in a manner consistent with our expectations. The net impact was a reallocation of overhead expenses from Operating Leases to Solar Energy System Sales totaling $16.2 million for the first three quarters of 2013 and $20.4 million for the full year 2012. As noted previously, there was no impact to Net Cash Flow, Estimated Nominal Contracted Payments Remaining, or Retained Value.

We identified the allocation error as part of our own internal controls process and reported it to our auditors.

47. Also, on March 18, 2014, the Company filed an 8-K report informing investors that its prior financial statements for the annual periods ended December 31, 2010, 2011 and 2012 should no longer be relied upon, "as a result of (i) an error related to the presentation of

- 13 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

non-cash stock based compensation costs in the consolidated statement of cash flows for the portion of such costs that were capitalized as part of the costs of solar energy systems leased and to be leased; and (ii) an error related to the classification of certain of the non-controlling interests in subsidiaries after the Company concluded that certain non-controlling interests with redemption rights should be presented in temporary equity and not permanent equity as had previously been disclosed. These matters also impacted the 2013 interim and 2012 annual and interim consolidated financial statements referred to in our Form 8-K filed on March 3, 2014."

48.     On this news, the Company's shares fell $4.40, or almost 6%, to close on March 19, 2014 at $72.70 per share.

49.     As a result of Defendants' false statements, SolarCity common stock traded at artificially inflated levels during the Relevant Period. When Defendants revealed the true nature SolarCity's financials and its impact on the Company's business prospects, the price of SolarCity common stock plummeted.  Not surprisingly, multiple securities class actions lawsuits have been filed against the Company for alleged violations of federal securities laws.

**DERIVATIVE AND DEMAND FUTILITY**
**ALLEGATIONS FOR THE BOARD OF SOLARCITY**

50.     Plaintiff brings this action derivatively in the right and for the benefit of SolarCity to redress injuries suffered and to be suffered by SolarCity as a result of the breaches of fiduciary duty by the Defendants.

51.     Plaintiff will adequately and fairly represent the interests of SolarCity and its shareholders in enforcing and prosecuting its rights.

52.     As a result of the facts set forth herein, Plaintiff has not made a demand on the SolarCity Board of Directors to institute this action against the Defendants.  Such demand would

- 14 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  be a futile and useless act because the Board is incapable of making an independent and

2  disinterested decision to institute and vigorously prosecute this action.

3      53.    Defendants who are currently the members of SolarCity's Board are Defendants

4  Musk, Fisher, Kendall, Pfund, Shulkin, L. Rive, P. Rive, Straubel, Rive, Garcias and Van de

5  Bunt (the "Director Defendants").

6  **The Members of the Board of Directors Lack Independence**

7      **Defendant L. Rive Lacks Independence**

8      54.    Defendant L. Rive serves as the Company's CEO, pursuant to which he has

9
10  received and continues to receive substantial monetary compensation and other benefits. Because

11  of L. Rive's employment with the Company he is not considered an independent director.

12  SolarCity has disclosed in its SEC filings that L. Rive is not considered -- under the listing

13  standards of the NASDAQ Global Market and rules promulgated by the SEC -- an independent

14  director.   Thus, Defendant L. Rive is incapable of impartially considering a demand to

15  commence and vigorously prosecute this action.

16      **Defendants P. Rive and Musk Lack Independence From Each Other and Defendant**
        **Musk**
17

18      55.    Defendants L. Rive and P. Rive are brothers and are each cousins of Defendant

19  Musk.  Due to their familial relationships, each is incapable of impartially considering a demand

20  to commence and vigorously prosecute this action against the other.

21      **Defendants Garcias, Musk and Straubel Lack Independence**

22      56.    Defendant Garcias is a current member of Tesla Motors, Inc.'s ("Telsa") board of

23  directors.  Musk has served as the CEO of Tesla since October 2004 and as chairman of Tesla's

24  Board since April 2004.  Straubel has served as chief technology officer of Tesla since May 2004

25  and as principal engineer, drive systems from Marcy 2004 to May 2005.  Due to their inter-

- 15 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

connected business relationships, each is incapable of impartially considering a demand to commence and vigorously prosecute this action against the other.

**Likelihood of Substantial Liability of the Audit Committee Defendants**

57.    Defendants Kendall, Fisher, Pfund and Shulkin each serve on the Audit Committee of SolarCity's Board.  As such, they will take no action against one another or the other members of the Board of Directors or the other Defendants because each member of this Committee breached important specific duties as Audit Committee members. According to SolarCity's SEC filings and Audit Committee Charter the purpose of the Audit Committee is, among other things, to monitor and oversee the quality and integrity of the Company's accounting process and system of internal controls.

58.    Defendants Kendall, Fisher, Pfund and Shulkin breached their fiduciary duties of due care, loyalty, and good faith. Specifically, they were aware that : (i) the Company lacked adequate controls over financial reporting; (ii) the Company misclassified its segment expenses; (iii) the Company's prior financial statements required restatement; and (iv) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

59.    The Audit Committee possesses and possessed essentially unfettered power to the Company's records and can request additional information or meet with management as it deems necessary to fulfill its responsibilities.

60.    As a result of the Audit Committee's failures, Defendants Kendall, Fisher, Pfund and Shulkin face a substantial likelihood of liability for breaches of fiduciary duties, making any demand upon them futile.

**Additional Likelihood of Substantial Liability of the Compensation Committee Members**

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

61.    Defendants Fisher, Pfund and Straubel were at times relevant hereto members of the Company's Compensation Committee. Pursuant to its Charter, the Compensation Committee is and was responsible for, among other things, reviewing and approving the compensation and incentive arrangements for the Company's CEO and Executive Chairman.

62.    The Compensation Committee permitted the continued compensation payments to senior executives based on misleading statements and grossly inflated financial results, and in the process, committed corporate waste.

**Additional Likelihood of Substantial Liability of the Board of Directors**

63.    The Board members of SolarCity approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise these wrongs from SolarCity shareholders or recklessly disregarded the wrongs complained herein, and are therefore not disinterested parties. Each of the Defendants exhibited a systematic failure to fulfill their fiduciary duties, which could not have been an exercise of good faith business judgment and amounted to extreme recklessness and bad faith.

64.    In order to bring this suit, the Board members of SolarCity would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

65.    The acts complained of constitute violations of the fiduciary duties owed by SolarCity's officers and directors and these acts are incapable of ratification.

66.    SolarCity has been, and will continue to be subjected to lawsuits for the actions described herein, including securities fraud class action lawsuits, yet the Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that

1  wrongful conduct to attempt to recover for SolarCity any part of the damages the Company has

2  suffered and will continue to suffer.

3      67.    The actions of the Directors and the relationships between and among the

4  Defendants as described above have impaired the Board's ability to validly exercise its business

5  judgment and have rendered it incapable of reaching an independent decision as to whether to

6  accept Plaintiff's demands.

7      68.    Any suit by the directors of SolarCity to remedy these wrongs would likely

8  expose the Defendants and SolarCity to further violations of securities laws which could result in

9  additional civil actions being filed against one or more of the Board members.  In light of this,

10

11  they are conflicted in making any supposedly independent determination as to whether to sue

12  themselves.

13      69.    Indeed, SolarCity has already expended and will continue to expend significant

14  sums of money as a result of the illegal and improper actions described above.    Such

15  expenditures will include, but are not limited to:

16          (a)    Costs incurred to carry out internal investigations and completing its

17  restatement, including legal fees paid to outside counsel and experts; and

18          (b)    Costs and legal fees for defending SolarCity and certain of the Defendants

19  against private securities class action litigation arising from illegal and improper conduct alleged

20  herein.

21      70.    Plaintiff has not made any demand on the shareholders of SolarCity to institute

22

23  this action since demand on the shareholders would be a futile endeavor for the following

24  reasons:

25

- 18 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1        (c)     SolarCity is a publicly held company with millions of shares outstanding,

2  and thousands of shareholders;

3        (d)     Making demand on such a number of shareholders would be impossible

4  for Plaintiff, who has no way of finding out the names, addresses or phone numbers of all the

5  shareholders; and

6        (e)     Making demand on all shareholders would force Plaintiff to incur huge

7  expenses, assuming all shareholders could be individually identified.

8

**COUNT I**

9  **AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR**
**DISSEMINATING FALSE AND MISLEADING INFORMATION**

10

11      71.    Plaintiff incorporates by reference and realleges each and every allegation set

12  forth above, as though fully set forth herein.

13      72.    As alleged in detail herein, each of the Defendants had a duty to ensure that

14  SolarCity disseminated accurate, truthful and complete information to its shareholders.

15      73.    Defendants violated their fiduciary duties of care, loyalty, and good faith by

16  causing or allowing the Company to disseminate to SolarCity shareholders materially misleading

17  and inaccurate information through public statements and disclosures as detailed herein. These

18  actions could not have been a good faith exercise of prudent business judgment.

19      74.    As a direct and proximate result of Defendants' foregoing breaches of fiduciary

20  duties, the Company has suffered significant damages, as alleged herein.

21

22  **COUNT II**
**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR**

23  **FAILING TO PROPERLY OVERSEE AND MANAGE THE COMPANY**

24      75.    Plaintiff incorporates by reference and realleges each and every allegation

25  contained above, as though fully set forth herein.

76.     Defendants owed and owe SolarCity fiduciary obligations.  By reason of their fiduciary relationships, Defendants specifically owed and owe SolarCity the highest obligation of good faith, fair dealing, loyalty and due care.

77.     Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

78.     As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, SolarCity has sustained significant damages, not only monetarily, but also to its corporate image and goodwill.

79.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

80.     Plaintiff, on behalf of SolarCity, has no adequate remedy at law.

## COUNT III
## AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT

81.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

82.     By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of SolarCity.

83.     Plaintiff, as a shareholder and representative of SolarCity, seeks restitution from these Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT IV
## AGAINST ALL DEFENDANTS FOR ABUSE OF CONTROL

84.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

85.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence SolarCity, for which they are legally responsible.  In particular, Defendants abused their positions of authority by causing or allowing SolarCity to misrepresent material facts regarding its business.

86.     As a direct and proximate result of Defendants' abuse of control, SolarCity has sustained significant damages.

87.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

88.     Plaintiff, on behalf of SolarCity, has no adequate remedy at law.

## COUNT V
## AGAINST ALL DEFENDANTS FOR GROSS MISMANAGEMENT

89.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

90.     Defendants had a duty to SolarCity and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of SolarCity.

91.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of SolarCity in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of SolarCity's affairs and in the use and preservation of SolarCity's assets.

92.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants

caused SolarCity to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to SolarCity, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged SolarCity.

## COUNT VI
## AGAINST ALL DEFENDANTS FOR WASTE OF CORPORATE ASSETS

93. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

94. As a result of the misconduct described above, and by failing to properly consider the interests of the Company and its public shareholders, Defendants have caused SolarCity to incur (and SolarCity may continue to incur) significant legal liability and/or legal costs to defend itself as a result of Defendants' unlawful actions.

95. As a result of this waste of corporate assets, Defendants are liable to the Company.

96. Plaintiff, on behalf of SolarCity, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B. Directing SolarCity to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's

1  supervision of operations and develop and implement procedures for greater shareholder input

2  into the policies and guidelines of the Board;

3        C.     Awarding to SolarCity restitution from Defendants, and each of them, and

4  ordering disgorgement of all profits, benefits and other compensation obtained by the

5  Defendants;

6        D.     Awarding to Plaintiff the costs and disbursements of the action, including

7  reasonable attorneys' fees, experts' fees, costs, and expenses; and

8        E.     Granting such other and further relief as the Court deems just and proper.

9  

10  **JURY DEMAND**

11        Plaintiff demands a trial by jury.

12  Dated: June 11, 2014          Respectfully submitted,

13  

14                    By:                                                                    
Robert S. Green
GREEN & NOBLIN, P.C.
700 Larkspur Landing Circle, Suite 275
Larkspur, CA 94939-1755
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
rsg@classcounsel.com

15  

16  

17  

18  Marc S. Henzel
LAW OFFICES OF MARC HENZEL
19  431 Montgomery Ave., Suite B
Merion Station, PA 19066
20  Telephone: (610) 660-8000
Facsimile: (610) 660-8080
21  mhenzel@henzellaw.com

22  *Attorneys for Plaintiff*

23  

24  

25  

- 23 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## VERIFICATION

I, Leonard Stastny, declare that I have reviewed the Complaint ("Complaint") prepared on behalf of SolarCity Corporation, and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of SolarCity Corporation common stock during the relevant time period in which the wrongful conduct alleged and complaint of in the Complaint was occurring.

Dated: MAY 23, 2014

# EXHIBIT B

1    IGNACIO E. SALCEDA, State Bar No. 164017
     isalceda@wsgr.com
2    BENJAMIN M. CROSSON, State Bar No. 247560
     bcrosson@wsgr.com
3    WILSON SONSINI GOODRICH & ROSATI
     Professional Corporation
4    650 Page Mill Road
     Palo Alto, CA 94304-1050
5    Telephone: (650) 493-9300
     Facsimile: (650) 565-5100
6
     Attorneys for Defendant
7    Antonio J. Gracias

**ENDORSED FILED**
SAN MATEO COUNTY

JUN 1 8 2014

Clerk of the Superior Court
By____ LINA FINAU
DEPUTY CLERK

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                COUNTY OF SAN MATEO

10

11    LEONARD STASTNY, derivatively on behalf )   Master File No. CIV 529018
     of SOLARCITY, INC.,              )
12                         )    NOTICE OF APPEARANCE OF COUNSEL
             Plaintiff,        )
13                         )
                        )    Date Filed: June 11, 2014
14                         )
          v.                 )
15                         )
     LYNDON RIVE, PETER RIVE, ELON      )
16    MUSK, JOHN H.N. FISHER, DONALD R.    )
     KENDALL, JR., NANCY E. PFUND,        )
17    JONATHAN K. SHULKIN, JEFFREY B.    )
     STRAUBEL, BENNET VAN DE BUNT AND )
18    ANTONIO J. GRACIAS,             )
                        )
19             Defendants,       )
                        )
20                         )
                        )
21        and                 )
                        )
22    SOLARCITY CORPORATION,      )
                        )
23           Nominal Defendant.    )
                        )
24    _____ )

25

26

27

28

1    TO THE CLERK OF THE COURT AND ALL COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that defendant Antonia J. Gracias, by and through his

3    undersigned attorneys, hereby appears before this Court and, accordingly, accepts service of

4    process in the above-captioned action filed June 11, 2014.   Cal. Code Civ. P. § 410.50(a).

5    Copies of all pleadings, papers and notices should be served as follows:

6        Ignacio E. Salceda
         Benjamin M. Crosson
7        WILSON SONSINI GOODRICH & ROSATI
         Professional Corporation
8        650 Page Mill Road
9        Palo Alto, CA 94304-1050
         Telephone: (650) 493-9300
10       Facsimile:  (650) 565-5100

11   Dated: June 18, 2014                 WILSON SONSINI GOODRICH & ROSATI
12                                        Professional Corporation

13

14                                        By: _____
                                              Ignacio E. Salceda
15
                                          Attorneys for Defendant
16                                        Antonio J. Gracias

17

18

19

20

21

22

23

24

25

26

27

28
                                       - 1 -